CauutheRS, J.,
delivered the Opinion of the Court.
The defendant in error propounded the paper in contest, as the will of his mother, Margaret Watterson. The plaintiffs in error are the children of James Watterson, deceased; che other son of said Margaret, who deny that the said paper is valid as her will. An issue of, devisavit vel non, was formed in the Circuit Court of Hawkins, and decided in favor of the plaintiff, and the will was established.
It appears from the bill of exceptions, that the said Margaret had but the two children, Henry and James; that she apparently had equal affection for them; and often declared that she intended to divide her property equally between them. She died in 1850 or 1851, at the advanced age of, near, ninety years In February, 1854, this paper was presented for probate. It is dated in 1826, and gives almost her entire estate to Henry, by whom it was written. It was witnessed by Thomas and Henry Larkins. They lived eight or ten miles from her. She, in company with the wife of her son Henry, went to their houses, and got them to witness and keep *4 the will for her. She was illiterate, and could neither write, nor read writing. Henry Larkins says, that “she took me out and told me she had her will, and she wanted me to witness it and keep it. I told her I would read it to her; she said it was her will, and she knew what was in it. She stated as the reason she would not let me read it, that I would be talking about it. She made her mark to the will, and then I and Thomas Larkins witnessed it at her request, and in her presence. i then sealed it up, and she told me to keep it.” The statement of Thomas Larkins is very much the same in substance.
'There is no direct evidence that the paper was ever read to her, and the first question is, Whether that is indispensable in the case of illiterate persons ? The Circuit Judge charged that it was not, but it was enough for the jury to be satisfied that she understood the contents, no matter by what means. “ It was not necessary,” he said, “for the plaintiff to show by the evidence, that the will was read to the testatrix before she signed it; all the law requires in such cases is, that the jury should be satisfied from the proof, that the testatrix, at the time of the execution of the will, fully understood its contents;” that this knowledge might be made out by positive or circumstantial testimony; that the declarations of the testatrix at the time, and previous to the execution of the will, was competent testimony to show knowledge of contents.”
There are two grounds in this case to excite suspicion and distrust: the illiteracy of the testatrix, and the fact that the paper was written entirely by the • principal legatee.
*3 The general rule, that the free and voluntary execution of a paper by any one in his right mind, will be sufficient, prima facie, to establish a knowledge of its contents, does not apply to a case in either of these cata-gories, much less to one that falls into both; or rather, these cases are exceptions to the general rule. In such cases, the presumption of knowledge does not arise, and the burthen of proving it lies upon the propounders. The doctrine in relation to a will written by a legatee under it, was discussed and settled by this Court, in the ease of Patton vs. Allison, 7 Humph., 334-5. It is there held, in conformity to the English authorities cited, that the circumstance should excite strong suspicion, and calls upon the Court to be vigilant and zealous in the examination of the evidence in support of the will, and not to pronounce in its favor unless all suspicion is cleared away, and plenary evidence adduced of fairness, and knowledge of the contents. The Court reversed that case because the Court below charged, that previous declarations in conformity with the will were insufficient to establish the fact of knowledge. It was held that this might, or might not be sufficient; but that was a question for. the jury, and not the Court. It was not for the Court to prescribe any particular species, or measure of proof; but only that it must be full and ' sufficient in the face of the suspicion against it, to satisfy the mind that the testator knew the contents, and was in no way imposed upon. In that case, the most satisfactory evidence on the point to be made out, would certainly be the fact that the testator had read, or heard another read the paper. ¡But still the case may be made out by proof of other facts. J If *5 then the only ground of objection was, that the 'will was written by a beneficiary under it, there would be no terror in the charge.
But suspicions and objections against this will, are accumulated. The testatrix was illiterate — unable to read or write, very old, kept secret what she had done from all the world, except the witnesses, who lived at a distance from the family; and, in addition to all this, the paper was not propounded for several years after the death of the party, and more than a quarter of a century after its date. Certainly all these circumstances combined, should enjoin upon the Court and jury the necessity of the strictest scrutiny into the facts, and cause them to require the most satisfactory and conclusive proof, not only that the contents were perfectly understood, but, that the whole thing was fair and honest in every’ particular. This should have been emphatically impressed upon the jury in the charge.
° But the particular question raised upon the charge, in the argument, is, whether any other means of knowing the contents of the paper, but by hearing it read, will be sufficient, in the case of an illiterate person. His honor held, that knowledge was sufficient, no matter by what means acquired; that reading was not the indispensable and only mode. In this case, the only proof before the jury on the point in question was, that she said at the time the paper was witnessed by the Larkins, that she knew what it contained, and assigned reasons for not permitting it to be read. She did not say that she had ever heard it read, but only that she knew its contents. How she obtained this knowledge is no where disclosed. Whether it was derived from her *6 son, the draftsman and beneficiary, or from ■ some other purer and more reliable source, is not disclosed. The jury should have been told, that such information as that, would not be enough to establish the fact; and if she relied upon that alone for the knowledge she professed to have of the contents, it was not sufficient.
It is not contended that direct proof that the paper was read to her is necessary, but that the jury should have been instructed that the proof must satisfy them that’such was the fact. Instead of this, the Court held, in effect, that the reading was not indispensable; provided, it appeared to their satisfaction that she had knowledge of the contents, no matter how acquired. Upon either view, the charge was imperfect on this point, if not erroneous. For if knowledge acquired by any means would do, the jury ought to have been carefully guarded against placing any reliance upon information obtained from the interested draftsman of the paper, as to the contents, and to have been admonished that the suspicious cir-° cumstances surrounding .the case, enjoined it upon them to be most rigid in the investigation of the sources of her knowledgé, and the satisfactory character .of the mode by which it was obtained. Yet, as there is no request to thus extend and amplify the charge, we would not reverse upon that ground, where there is no positive error of law in the proposition announced.
But we think there is no inflexible rule of law, that the knowledge of the contents, which is required to be established in the case of persons who cannot read, or where the writer of the will gets a large benefit under it, can only be derived from hearing the will read, to be proved either by direct or circumstantial evidence; *7 but all that is necessary is, that it must appear to the full and entire satisfaction of the jury, that the testator fully understood, and freely assented.to the provisions of the will. This fact, as to the kind and description of proof, may be made out like any other disputed fact. But in a case of this description, the strength and conclusive character of it, must depend upon the degree of suspicion which the circumstances are calculated to excite, and it should be strong and convincing — equivalent at least, to the reading of the will, or hearing it correctly read. 1 Jar. on Wills, 44 to 47, and notes; 1 Williams on Ex’r, 18, 294; 7 Humph., 335; 4 Sneed, 88, Cox vs. Cox.
On the motion for a new trial, the affidavit of Arthur Click, and that of Horace Watterson, one of the contestants, were relied upon. Click states that in 1845 or 6, Henry Watterson told him that at the death of his mother, her negroes were to be divided, equally, between him and his brother, and said nothing about a will. Also, that then, or a short time before. Margaret Watterson told him she understood that her son Henry had a will giving him the negroes, and if he had, he made it himself, as she had never made such a will; and that she tried to get him, affiant, to draft a will for her, and said she had tried to get Richard Larkins and Jacob Miller to write a will for her. Pie further stated, that on the night before making his affidavit, he heard his mother, Rosanna Click, say that Margaret Watterson, for many years before her death, denied having made the will set up by Henry Watterson. This last, according to the affidavit of Horace Watterson, was newly discovered evidence. It might be important on the questions of her knowledge *8 of, and assent to tbe provisions of the will set up. For the same purpose the testimony of Arthur Click would have been pertinent. What effect such proof would have, would be for the jury to consider. Arthur Click was under subpoena, as a witness for defendants, but when the case was taken up on Monday, it seems was not in attendance, but was at home on account of sickness in his family. Nothing was said about his absence, and no application was made for a continuance on that ground; but as soon as it was ascertained that he was not in attendance, a messenger was dispatched for him, and he arrived at the Court on the next day about dinner-time, when the opening counsel for the plaintiff had commenced his argument, but had not concluded it, when the Court was moved to allow him to be then examined. The motion was overruled, and the case progressed, and resulted in a verdict in favor of the will.
Upon these questions of practice, resting in the discretion of the Judge, it is a rule of this Court, not to reverse, except in very strong cases, such as rarely occur. Yet such cases may be presented, and we think this is one of them. It was a strong case for relaxing the rules for the attainment of justice. Every proper exertion to get the witness there in time, was made. The only fault was in not asking for a continuance on account of his absence, before the commencement of the trial. But it was perhaps better for both parties to save the delay, and try the case at the hazard, on the part of defendants, of failing to get the witness there at all. We can see no good reason for refusing to let the witness be examined at the time he was offered, under the circumstances made out; such would have been a proper *9 exercise of the discretion of the Court for the attainment of justice.
It may be that neither of the grounds alone, would be sufficient to authorize a new trial in this case, but taking them all together, in yiew of the suspicions which crowd around the case, we feel it to be our duty to reverse the judgment, and remand the cause for another trial.